**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1990
_____

JESSICA CAROLINA MARTINEZ-BELTRAND, a/k/a Jessica Martinez,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A096-536-781)
Immigration Judge:  Honorable Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 11, 2013
Before:  AMBRO, JORDAN and BARRY, Circuit Judges

(Opinion filed: September 12, 2013)
_____

OPINION
_____

PER CURIAM

        Petitioner Jessica Carolina Martinez-Beltrand petitions for review of a final order

of the Board of Immigration Appeals (BIA) affirming the decision of the Immigration

Judge (IJ) denying asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We will deny the petition for review.

Martinez-Beltrand, a citizen of Honduras, arrived in the United States in 2004. The Department of Homeland Security charged her with being removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i), as an alien who was present in the United States without being admitted.

Martinez-Beltrand conceded that she was removable as charged, but applied for asylum, withholding of removal, and CAT relief, claiming that she had been persecuted in Honduras by gang members due to her wealth. She alleged that this persecution began in 2004, when gang members came to the funeral home that her family operates and asked her to give them money and join the gang; they promised to come back in the future for her answer. Martinez-Beltrand was so upset by this encounter that she left and never returned to the funeral home, and months later departed for the United States. Martinez-Beltrand's family has continued to operate the business, and gang members have periodically called asking for money (but have never returned in person). When the gang members call, Martinez-Beltrand's family threatens to call the police, and the gang members quickly hang up. However, in 2008, Martinez-Beltrand's stepbrother was murdered in his home. Martinez-Beltrand acknowledges that she does not know who committed the crime; however, she suspects that the gang did, because gang members talked to her stepbrother on one occasion eight months before the murder.

The IJ concluded that Martinez-Beltrand was removable, finding that she failed to meet her respective burdens of proof for asylum, withholding of removal, and CAT relief. The BIA then dismissed Martinez-Beltrand's appeal. First, the BIA concluded that the harm that Martinez-Beltrand suffered did not rise to the level of past persecution. Next, the BIA ruled that Martinez-Beltrand had failed to show that the gang's harassment was based on a statutorily protected ground. The BIA likewise perceived no error in the IJ's conclusion that Martinez-Beltrand had not shown that she would suffer future persecution if removed to Honduras. Finally, the BIA affirmed the IJ's ruling that Martinez-Beltrand had not established eligibility for CAT relief. Martinez-Beltrand then filed a timely petition for review with this Court.

We have jurisdiction pursuant to 8 U.S.C. § 1252. Because the BIA issued its own opinion, we review its decision rather than the IJ's. Roye v. Att'y Gen., 693 F.3d 333, 339 (3d Cir. 2012). We must uphold the agency's factual findings, including its findings as to whether Martinez-Beltrand has demonstrated past persecution or a well-founded fear of future persecution, if they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). We will reverse a finding of fact only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Martinez-Beltrand first argues that she is entitled to asylum because she has suffered past persecution. To be eligible for relief due to past persecution, aliens must

3

show, among other things, that they were victims of "an incident, or incidents, that rise to the level of persecution." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (citation and internal quotation marks omitted).

Substantial evidence supports the BIA's conclusion that Martinez-Beltrand failed to show past persecution. We have upheld agency conclusions that persecution cannot be shown by minor assaults that do not require medical care, see Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007), or unfulfilled threats, see Li v. Att'y Gen., 400 F.3d 157, 164 (3d Cir. 2005). Here, while Martinez-Beltrand was allegedly harassed by gang members, who attempted to extort money from her, it was reasonable for the BIA to conclude that this did not rise to the level of persecution. See Abdille v. Ashcroft, 242 F.3d 477, 494 (3d Cir. 2001) ("[O]rdinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum."). Moreover, while Martinez-Beltrand's stepbrother was murdered by unnamed people for unknown reasons, she presented no evidence that the murder was committed "as a means of targeting [her]," and thus this incident does not support her claim of past persecution. Tao Jiang v. Gonzales, 500 F.3d 137, 141 (2d Cir. 2007). Finally, we are also satisfied that the BIA properly considered the cumulative effect of these incidents.

For similar reasons, we also conclude that substantial evidence supports the BIA's finding that Martinez-Beltrand failed to show that she has a well-founded fear of future persecution. A future-persecution claim requires the applicant to demonstrate a

4

subjective fear of persecution and that her fear is objectively reasonable.  See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005).  To satisfy the objective prong, the applicant must show either that (1) "she would be individually singled out for persecution" or (2) there is a "pattern or practice" in the home country of persecuting similarly situated people.  Id. (citation and internal quotation marks omitted).

Martinez-Beltrand argues that she would be individually singled out for persecution in Honduras; in support of this claim, she notes that she was harassed in 2004, that the gang has since harassed her family, and that her stepbrother was murdered.  However, as the BIA observed, since Martinez-Beltrand left Honduras nearly a decade ago, gang members have never even asked about her, let alone made any effort to find her.  Moreover, notwithstanding the sporadic phone calls from the gang members to the funeral home, the business has continued unabated, and Martinez-Beltrand's mother has never been harmed or even seriously threatened.  See generally id. at 537.  Finally, while the murder of Martinez-Beltrand's stepbrother is, obviously, a very serious incident, Martinez-Beltrand does not know who committed the crime or for what reason, and it was therefore reasonable for the BIA to conclude that this incident did not advance Martinez-Beltrand's claim that she would be persecuted due to her wealth if she returned to Honduras.  See Boci v. Gonzales, 473 F.3d 762, 767 (7th Cir. 2007) ("[E]ven though Dhurata's family's home and warehouse were both burned down, she did not know who committed these crimes.  As a result, she could only speculate that they were politically

5

motivated rather than a result of widespread lawlessness at the time."); see also Navas v. INS, 217 F.3d 646, 659 n.18 (9th Cir. 2000) ("[T]he death of one family member does not automatically trigger a sweeping entitlement to asylum eligibility for all members of her extended family." (alteration, citation, and internal quotation marks omitted)).  Thus, we cannot say that the record compels a conclusion contrary to the BIA's.[1]

Because we discern no error in the BIA's conclusion that Martinez-Beltrand failed to establish that she suffered from past persecution or has a well-founded fear of future persecution, she is not entitled to asylum.  See 8 U.S.C. § 1101(a)(42).  She is thus necessarily unable to satisfy the higher standard for eligibility for withholding of removal.  See Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006).

Finally, Martinez-Beltrand challenges the BIA's rejection of her CAT claim.  To be entitled to CAT relief, Martinez-Beltrand must demonstrate that it is more likely than not that she will be tortured if she is removed to Honduras.  See 8 C.F.R. § 1208.16(c)(2).  She must also show that the torture will be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. at § 1208.18(a)(1), (7).  Here, the BIA concluded that "the evidence of record does not indicate that officials in Honduras acquiesce in or exhibit willful blindness to any torture inflicted by gangs."  This conclusion was entirely reasonable.  Martinez-Beltrand's

---

[1] Because we conclude that the BIA did not err in finding that Martinez-Beltrand failed to establish past persecution or a well-founded fear of future persecution, we need not reach the BIA's alternative conclusion that Martinez-Beltrand's proposed social group—

6

evidence showed that she did not call the police after she was harassed, and when her mother called the police after her trouble with the gang, the police responded and offered assistance. Therefore, we discern no error in the BIA's disposition of Martinez-Beltrand's CAT claim.

Accordingly, we will deny Martinez-Beltrand's petition for review.

---

individuals who are wealthy or perceived as wealthy—is not cognizable.